UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

IN RE:

CYNTHIA EILEEN JOHNSON                      CASE NO 17-11510-TMD
    DEBTOR

CYNTHIA EILEEN JOHNSON
    PLAINTIFF

v.                                                                    ADV. NO. 18-01003

JPMORGAN CHASE BANK, N.A.
    DEFENDANT

**AMENDED COMPLAINT TO DETERMINE VALIDITY OF LIEN
AND FOR RELATED RELIEF**

NOW COME Cynthia Eileen Johnson ("Plaintiff") and files this Amended Complaint to Determine Validity of Lien and for Related Relief complaining of JP Morgan Chase Bank, N.A. ("Chase") and would show this Court the following:

**STATEMENT OF THE NATURE OF THE DISPUTE**

On September 28, 2006, Plaintiff and her husband obtained a home equity loan from Chase with a principal amount of $112,000 secured by the Homestead (defined below). Chase obtained an "Alternative Valuation Report" (not an appraisal) in connection with the home equity loan. The Alternative Valuation Report grossly exaggerated the value of the Homestead property with the result that the amount of the loan exceeded 80% of the value of the property in violation of the Texas Constitution. Chase chose not to cure the violation after demand from the Debtor.

**JURISDICTION**

1. This Court has jurisdiction over this matter pursuant to 28 USC Sections 157 and 1334.

2. This is a core proceeding pursuant to Section 157(b)(2)(E) and (K).

3. Plaintiff consents to entry of a final judgment by this court.

## PARTIES

4. Debtor/Plaintiff is the debtor in this Chapter 7 case.

5. Chase is a national banking association with its principal place of business in Ohio. Chase is authorized to do business in the state of Texas. Chase may be served by serving its registered agent for service of process: CT Corporation System, 350 N. St. Paul St., Suite 2900, Dallas, TX 75201-4234. Chase may also be served by serving its Chairman and CEO, Jamie Dimon, 270 Park Avenue, New York, NY 10005.

## FACTS

6. Plaintiff's Chapter 7 case was commenced by the filing of a voluntary petition on December, 4, 2017.

7. Plaintiff is the owner of certain real property and improvements consisting of a single family residence (the "Homestead") located at 13247 FM 2769, Austin, Travis County, TX 78726.

8. Plaintiff is the sole owner of the Homestead pursuant to a Warranty Deed from her mother Derrell Moore recorded April 29, 1991.

9. Plaintiff obtained a home equity loan from Bank One Texas, N.A. dated January 15, 1999 in the amount of $26,747.12. Bank One Texas, N.A was subsequently merged into Chase. Although her husband, William O. Johnson, is identified in the 1999 loan documents as an "owner," he has never had an ownership interest in the Homestead.

10. On September 28, 2006, Plaintiff and her husband obtained a home equity loan from Chase with a principal amount of $112,000 secured by the Homestead (the "Extension of Credit").

Although her husband, William O. Johnson, is identified in the 2006 loan documents related to the Extension of Credit as an "owner," he has never had any ownership interest in the Homestead.

11. At the time of filing of this adversary, the approximate outstanding balance of the Extension of Credit was $155,000

12. In connection with the Extension of Credit, Chase obtained an "Alternative Valuation - Exterior Report" from TransUnion Settlement Solutions dated August 3, 2006, which found a market value for the Homestead of $150,000.

13. The HUD-1A Settlement Statement prepared in connection with the Extension of Credit reflects at line 803 an "*Appraisal* Fee to TRANSUNION" in the amount of "$55.00 (POC)." [Emphasis added.]

14. Upon information and belief, no *appraisal* was performed in connection with the Extension of Credit.

15. Defendant falsely represented to Plaintiff that an appraisal was prepared in connection with the Extension of Credit.

16. At closing, Plaintiff, her husband and Chase executed an "Acknowledgment of Fair Market Value" acknowledging that the Homestead had a fair market value of $140,045.

17. ***This is a very important fact** – the valuation obtained by Defendant from TransUnion found a value of $150,000, but the acknowledgment of value recites a value of only $140,045.*

18. The explanation for the difference in values as stated in a letter dated August 2, 2017 from Chase to Plaintiff's counsel is as follows:

> We must determine the current value of the home at origination because it's the collateral for the loan. We used an Exterior valuation report, which is an acceptable

   value determination that we used based on guidelines in effect at that time. The value was determined to be $150,000 based upon the entire 4.2 acres on August 3, 2006. We've enclosed a copy for your records.

   We received the survey field notes and the tax information indicating that the property was 4.1174 acres. However, there was only .50 of an acre, which was non-agricultural that we could lend on. We needed a survey and field notes for just the .50 acre, which we received.

   On September 27, 2006, we verified that the land value was $2,750 per acre, which we used to back out the value of the additional acreage that we could lend on. We encumbered only .50 acre, which adjusted the value to $140,045 for lending purposes. Your clients had requested a HELOC of $120,000; however, with the new value determination, we were only able to lend them $112,000.00.

19.  The Texas Constitution, Art. 16, §50(a)(6)(h) provides:

(h) "A lender or assignee for value *may conclusively rely on the written acknowledgment as to the fair market value of the homestead property* made in accordance with Subsection (a)(6)(Q)(ix) of this section *if*:
  (1) *the value acknowledged to is the value estimate in an appraisal or evaluation prepared in accordance with a state or federal requirement applicable to an extension of credit under Subsection (a)(6)*; **and**
  (2) the lender or assignee *does not have actual knowledge* at the time of the payment of value or advance of funds by the lender or assignee that *the fair market value stated in the written acknowledgment was incorrect*." [Emphasis added.]

20.  The value stated in the Acknowledgment of Fair Market is *not* the value estimate in an appraisal prepared in accordance with a state of federal requirement applicable to the Extension of Credit. As explained by Chase, the problem is that the property "appraised" was not the value of the property which secured the Extension of Credit.

21.  At the time of the Extension of Credit the Travis Central Appraisal District valuation of the Homestead was $76,465 *according to the Alternative Valuation – Exterior Report obtained by Chase from TransUnion*.

22.  By letter dated June 7, 2017, Debtor made demand upon Defendant to cure the 80% loan to value violation in compliance with Texas Constitution Art. 16, Sec. 50 (a)(6)(Q)(x)(b).

23. On July 31, 2017, Defendant responded to Plaintiff's demand with a letter headed "We need more time to research your request." The letter is unsigned but indicates that it is from "Mortgage Banking Executive Office."

24. Also on July 31, 2017, Defendant responded to Plaintiff's demand with a letter headed "We're currently researching this request." The letter is unsigned but indicates that it is from "Mortgage Banking Executive Office."

25. On August 2, 2017, Defendant responded to Plaintiff's demand with a letter headed "There is no TX50a6 violation" in which Defendant rejected Plaintiff's contention that the Extension of Credit violated the 80% loan to value limit in Section 50(a)(6)(B) of the Texas Constitution. The letter is unsigned.

## FIRST CAUSE OF ACTION

## BREACH OF CONTRACT - TEXAS EQUITY LENDING STATUTE

26. Texas Constitution Art. 16, Sec. 50(a)(6)(B) provides that principal amount of an extension of credit "when added to the aggregate total amount of the outstanding principal balances of all other indebtedness secured by valid encumbrances of record against the homestead does not exceed 80 percent of the fair market value of the homestead on the date the extension of credit is made."

27. Upon information and belief, at the time the Extension of Credit was made, the fair market value of the Debtor's Homestead was no more than $38,500 according to a retrospective appraisal obtained by Plaintiff.

28. Defendant had actual knowledge that TransUnion Settlement Solutions was preparing fraudulent valuations at the time of the Extension of Credit (September 28, 2006) because prior to that time, Plaintiffs' counsel had sued Defendant (as successor by merger to Bank

One, N.A.) in two other cases for using fraudulent valuations prepared by TransUnion Settlement Solutions.

    a.    In *Swart v. JP Morgan Chase Bank, N.A.*, Cause No. 4:06-CV-02082 (D.S.D.Tex.2006), Bank One obtained a valuation from TransUnion Settlement Solutions dated December 17, 2001, which found a value for the borrowers' homestead of $210,906. That value would not support the loan, and on December 27, 2001, Bank One obtained a second valuation from TransUnion Settlement Solutions which found a value of $275,000. (An increase in value of $64,094 in only ten days.) Swart, through undersigned counsel for this Debtor, sued Defendant in the 129th District Court of Harris County, Texas, on May 25, 2006, four months before the valuation obtained with respect to the Extension of Credit.

    b.    In *Osherow v. JP Morgan Chase Bank, N.A.*, Adv. No. 06-1189 (Bankr.W.D.Tex.2006), Bank One obtained a valuation for the borrowers' homestead of $170,000 based upon three alleged comparable sales, none of which actually happened. That adversary was filed on June 22, 2006, 42 days before the valuation obtained with respect to the Extension of Credit.

26. ***After both of those lawsuits were filed***, Defendant obtained a valuation from TRANSUNION in connection with the September 28, 2006 Extension of Credit. That valuation found a value of $150,000.

    i.    Plaintiff was charged an "Appraisal Fee" on connection with the Extension of Credit.

    ii.    In fact, there was no "appraisal."

    iii.    The Alternative Valuation - Interior Report prepared by TransUnion specifically

states that it is not an appraisal. In addition, it does not comply with the Uniform Standards of Professional Appraisal Practice which require that an appraisal be signed by the appraiser. The TransUnion valuation is not signed.

27. The Alternative Valuation suffers from several defects.

- The Alternative Valuation states that the age of the improvements were "26 – 30 Years." The original house was built in 1876. Although Debtor has made upgrades to the house, the original structure was 130 years old at the time of the Extension of Credit.

- The septic system that services the Homestead is located on adjoining property owned by the Debtor which is not part of the Homestead.

- The well which services the Homestead is located on adjoining property not owned by the Debtor.

- The Homestead is accessed by an easement across property not owned by the Debtor.

27. Texas Constitution Art. 16, Sec. 50(a)(6)(Q)(x) provides:

> The lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit *IF* the lender or holder fails to comply with the lender's or holder's obligations under the extension of credit *AND* fails to correct the failure to comply not later than the 60th day after the date the lender or holder is notified by the borrower of the lender's failure to comply by [with the cure provisions provided in the statute.] [Emphasis added.]

## CAUSE OF ACTION

## BREACH OF CONTRACT –ATTORNEYS' FEES

28. Failure to correct the 80% loan to value violation constitutes a breach of contract. *Garofolo v. Ocwen Loan Servicing, L.L.C.*, 497 S.W.3d 474 (Tex.2016); *Wood v. HSBC Bank USA, N.A.*, 2016 WL 2993923 (Tex.2016).

29. Tex. Civ. Prac. & Rem. Code §38.001. et seq. provide that a prevailing party may recover

attorneys fees in a breach of contract cause of action.

## SECOND CAUSE OF ACTION

## QUIET TITLE

30. A quiet title action in Texas requires the plaintiff to prove:

   a. That the plaintiff has an interest in specific property;

   b. Title to the property is affected by a claim by the defendant; and

   c. The claim, although facially valid, is invalid or unenforceable.

31. Plaintiff is the owner of the Homestead and, as such, has an interest in the property.

32. Title to the Homestead is affected by Defendant's invalid lien.

33. Although Defendant's lien on Plaintiff's homestead is facially valid, the is invalid and unenforceable for the reasons stated above.

Wherefore, Plaintiff requests that upon trial of this matter, that this Court enter judgment as follows:

   1. Defendant's lien upon Debtor's Homestead securing the Extension of Credit be declared in all respects void;

   2. That all principal and interest under the Extension of Credit be forfeited;

   3. Defendant be ordered to pay Debtor's attorneys fees and expenses incurred in pursuing this action; and

   4. Plaintiff have such other and further relief to which she shows herself to be justly entitled.

                    Respectfully submitted,

                    LAW OFFICE OF MICHAEL BAUMER
                    7600 Burnet Rd
                    Suite 530
                    Austin, TX 78757
                    512-476-8707
                    Fax  512-476-8604
                    baumerlaw@baumerlaw.com

                    By:/s/Michael Baumer
                      Michael Baumer -01931920
                      Megan Baumer-01931915

## CERTIFICATE OF SERVICE

The above signed certifies that a true and correct copy of the above and foregoing pleading is being served upon counsel for Defendant, via email CMECF, as set forth below, on this 30th day of May, 2018:

Wm. Lance Lewis
Timothy A. York
QUILLING, SELANDER, LOWNDS, WINSLETT
 & MOSER, P.C.
2001 Bryan St., Suite 1800
Dallas, TX 75201
llewis@qslwm.com
tyork@qslwm.com