

**Dated: March 28, 2019.**

_____
**TONY M. DAVIS**
**UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 17-11510-TMD |
| | § | |
| CYNTHIA EILEEN JOHNSON, | § | CHAPTER 7 |
|     Debtor. | § | |

| | | |
|---|---|---|
| CYNTHIA EILEEN JOHNSON, | § | |
|     Plaintiff, | § | |
| | § | ADV. NO. 18-01003-TMD |
| v. | § | |
| | § | |
| JPMORGAN CHASE BANK, N.A., | § | |
|     Defendant. | § | |

## MEMORANDUM OPINION

A borrower says that her home equity loan violated the 80% loan to value ratio in the Texas Constitution. Because of this, she argues, the lender must forfeit all principal and interest due under the loan, and its lien should be declared void. The lender now moves for a summary judgment that these claims fail because of the statute of limitations, quasi-estoppel, and the Texas Constitution's safe harbor provision.

1

I. **FACTS**

In 2006, Mrs. Johnson and her husband applied for a $120,000 home equity loan from JPMorgan Chase Bank.[1] As part of the application process, Chase asked TransUnion Settlement Solutions to prepare a valuation of the property.[2] TransUnion then prepared its "Alternative Valuation – Exterior Report," in which it appraised the 4.12-acre property at $150,000.[3] The TransUnion report also includes a section called "Estimate of Value Prior to Inspection" that lists the assessed value of the property at $76,465 and the owner estimate of value at $180,000.[4] After Chase received the TransUnion report, it determined that it could only lend on the .5 acres that contained the Johnson's homestead.[5] Rather than request a new valuation from TransUnion for the .5-acre homestead, Chase simply reduced the value of the property to $140,045 and the loan amount to $112,000, about 80% of $140,045.[6] Chase got this value through an extrapolation it did not fully explain.[7]

The next month, Mrs. Johnson and her husband agreed to the lesser loan amount and signed an "Owner Acknowledgement" and "Acknowledgement of Fair Market Value" stating under oath that the homestead tract was worth $140,045.[8] At some point, Mrs. Johnson and her husband stopped paying on the loan and are now over six years in default.[9]

---

[1] Mot. for Summ. J., ECF No. 25-2, pg. 21:4.
[2] Mot. for Summ. J., ECF No. 25-2, pg. 21:5.
[3] Mot. for Summ. J., ECF No. 25-2, pg. 21:5.
[4] Mot. for Summ. J., ECF No. 25-2, pg. 34.
[5] The remaining 3.62 acres were subject to an agriculture property tax exemption and not could not serve as security for Chase's lien. Mot. for Summ. J. 5, ECF No. 25-2, pg. 22:6.
[6] Mot. for Summ. J., ECF No. 25-2, pg. 22:6.
[7] Chase says "[t]he Valuation estimated a land value of $2,750 per acre and Chase used this value, which is approximately $9,955 total for the 3.62 acres subject to the agricultural exemption, as the value of the land that it could not lend against. This resulted in a reduction of the market value of the Property subject to the loan down to $140,045." Mot. for Summ. J., ECF No. 25-2; pg. 22:6. Presumably, a portion of the $140,045 value comes from improvements on the property, but the TransUnion report does not state the value of the improvements or whether the improvements were all on the homestead tract. Mot. for Summ. J., ECF No. 25-2, pg. 34.
[8] Mot. for Summ. J., ECF No. 25-2, pg. 36.
[9] Mot. for Summ. J., ECF No. 25-2, pg. 22:9.

Over ten years after she signed the loan documents, Mrs. Johnson filed bankruptcy[10] and her bankruptcy counsel sent a letter to Chase stating that the loan amount violated the 80% loan to value ratio requirement in the Texas Constitution, and demanding that Chase cure the violation.[11] Chase denied that it violated the 80% loan to value ratio requirement.[12]

Mrs. Johnson then filed this adversary proceeding seeking a ruling that the $112,000 loan violated the 80% loan to value requirement because the property was worth no more than $38,500 when the loan was made.[13] Because of this alleged violation, she claims that Chase breached the loan agreement and she argues that Chase should forfeit all principal and interest paid and pay her attorney's fees.[14] She also brings a quiet title action seeking to void Chase's lien under section 50(c) of the Texas Constitution.[15]

## II. ANALYSIS

The Texas Constitution protects homesteads in Texas from forced sale.[16] But when a homeowner takes out a home equity loan, the lender can foreclose if the loan meets the requirements in section 50(a)(6).[17] One such requirement is that the loan amount, when added to all other encumbrances on the property, must not exceed 80% of the value of the home.[18] Section 50(a)(6) also requires the loan agreement itself to provide that the lender must forfeit all principal and interest due under the loan if it fails to cure a violation of the 80% requirement within 60 days of receiving notice of the violation.[19] In addition, a lien based on a home equity

---

[10] *In re Johnson*, Case No. 17-11510 (filed Dec. 4, 2017).
[11] Mot. for Summ. J., ECF No. 25-2, pg. 47.
[12] Mot. for Summ. J., ECF No. 25-2, pg. 49.
[13] Am. Compl., ECF No. 23 at 5:27.
[14] Am. Compl., ECF No. 23 at 7:27.
[15] Am. Compl., ECF No. 23 at 8:30-33.
[16] *Alexander v. Wells Fargo Bank, N.A.*, 867 F.3d 593, 598 (5th Cir. 2017).
[17] *Id*.
[18] TEX. CONST. art. XVI, § 50(a)(6)(B).
[19] TEX. CONST. art. XVI, § 50(a)(6)(Q)(x).

loan that fails to meet the requirements in section 50(a)(6) is void,[20] unless the lender can show that the loan did not violate the Texas Constitution under a safe harbor provision.[21]

Chase seeks a summary judgment based on three arguments. First, Chase argues that Mrs. Johnson has no right to forfeiture because the breach of contract and attorney's fee claims are barred by the four-year statute of limitations. Next, Chase argues that Mrs. Johnson should be estopped from asserting her quiet title claim because of her prior statements affirming the $140,045 value. Finally, Chase argues that the loan did not violate the Texas Constitution because it satisfies the safe harbor provision.[22]

To obtain a summary judgment, Chase must show that there is no genuine dispute as to any material fact.[23] If it meets this burden, Mrs. Johnson must point to specific facts that put in dispute an issue of material fact.[24] Chase supported its summary judgment motion with a business records affidavit and the loan application file.[25] In response, Mrs. Johnson presented no evidence of her own.[26] Instead, she argued that Chase's reduction of the value listed in the TransUnion report, as well as deficiencies in the report itself, raise a genuine issue of material fact over the true value of the property. She also disputed Chase's interpretation of the relevant case law.[27]

---

[20] TEX. CONST. art. XVI, § 50(c).
[21] TEX. CONST. art. XVI, § 50(h).
[22] Mot. for Summ. J., ECF No. 25.
[23] Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A "genuine issue" of "material fact" is one that could affect the outcome of the action or allow a reasonable fact finder to find for the non-moving party. *James v. Texas Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008).
[24] *Vulcan Constr. Materials v. Kibel (In re Kibel)*, 2011 WL 1042575, at *3 (Bankr. W.D. Tex. Mar. 16, 2011) (citing *Malacara v. Garber*, 353 F.3d 393, 403 (5th Cir. 2003)). The Court looks at the evidence in a light most favorable to the non-moving party. *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006).
[25] Mot. for Summ. J., ECF No. 25.
[26] Resp. to Mot. for Summ. J, ECF No. 28.
[27] Resp. to Mot. for Summ. J, ECF No. 28.

### 1. The forfeiture remedy—only available through Mrs. Johnson's breach of contract claim—is barred by the 4-year statute of limitations.

In the last few years, the Texas Supreme Court and the Fifth Circuit have ruled on the forfeiture provision in section 50(a)(6). In *Garofolo v. Ocwen Loan Serving, LLC*, a borrower sued her lender seeking forfeiture of a home equity loan's principal and interest because the lender failed to return the cancelled note and release of lien within 60 days of receiving notice of the failure, another requirement in section 50(a)(6).[28] The Texas Supreme Court ruled on whether forfeiture was a constitutional right or instead was only available through a breach of contract action.[29]

The Texas Supreme Court held that while the Texas Constitution lays out conditions a lender must meet if it wants to foreclose on a Texas homestead, it does not create a constitutional right to forfeiture.[30] Instead, section 50(a)(6) provides that to be foreclosable, the loan itself must establish forfeiture as a contractual remedy for such a breach.[31] This "forfeiture penalty is triggered when, following adequate notice, a lender fails to *correct* the complained-of deficiency *by* performing one of six available corrective measures."[32] In *Garofolo*, because a release of lien was not one of the six corrective measures listed in the Texas Constitution, the Court held that the forfeiture remedy was unavailable to the homeowner in that case.[33]

After the *Garofolo* opinion, the Fifth Circuit looked at when the statute of limitations on a

---

[28] *Garofolo v. Ocwen Loan Servicing, LLC*, 497 S.W.3d 474, 475 (Tex. 2016); TEX. CONST. art. XVI, § 50(a)(6)(Q)(vii).
[29] *Id*.
[30] *Id*.
[31] *Id*.
[32] *Id.* at 481.
[33] *Id.* at 484.

50(a)(6) breach of contract claim begins to run. In *Alexander v. Wells Fargo Bank, N.A.*,[34] the homeowner discovered four years after she received a home equity loan that her loan documents did not include an Acknowledgement of Fair Market Value, a document required by the Texas Constitution to make the loan foreclosable.[35] She requested a copy of the document from her lender, but it never responded.[36] Years passed, and the homeowner defaulted on the loan.[37] On the eve of foreclosure, she sued the lender for violating the Texas Constitution and sought forfeiture for breach of contract.[38] Because the breach, failure to include the Acknowledgement, occurred when the loan originated, the Fifth Circuit found that the statute of limitations ran four years from the origination date.[39] In doing so, it rejected the borrower's contention that the four years should run from the date she made the cure request.[40]

So too here. Mrs. Johnson, like the borrower in *Alexander*, argues that the statute of limitations started when she gave Chase notice that the loan violated the 80% loan to value ratio requirement and Chase refused to cure. But if Chase violated the loan to value ratio, this happened, as in *Alexander*, at the origination of the contract, meaning that the statute of limitations on the breach of contract claim began to run at the origination of the contract.[41]

And so the deadline for Mrs. Johnson to bring her breach of contract claim was in 2010, four years after the loan originated. Because this lawsuit was not filed until 2018, the breach of

---

[34] *Alexander v. Wells Fargo Bank, N.A.*, 867 F.3d 593 (5th Cir. 2017).
[35] *Alexander v. Wells Fargo Bank, N.A.*, 867 F.3d 593, 595 (5th Cir. 2017).
[36] *Id*.
[37] *Id*. at 595-96.
[38] *Alexander v. Wells Fargo Bank, N.A.*, 867 F.3d 593, 596, 602 (5th Cir. 2017).
[39] *Id*. at 603.
[40] *Id*. at 603. The Court then said that in some cases the discovery rule might "defer accrual of a cause of action until the plaintiff knew or, by exercising reasonable diligence, should have known of the facts giving rise to the cause of action." In those cases, "the nature of the injury must be inherently undiscoverable and the injury itself must be objectively verifiable." *Id*. But Mrs. Johnson did not raise this argument in her response to the summary judgment motion, so the Court will refrain from considering whether the discovery rule might apply here.
[41] *Id*.

contract claim is now barred by the statute of limitations.[42] The attorney's fee claim is based on Chapter 38 of the Texas Civil Practice and Remedies Code, which awards attorney's fees to a prevailing party in a breach of contract action.[43] Because Mrs. Johnson's breach of contract claim fails, her claim for attorney's fees also fails.

### 2. The TransUnion report raises a genuine issue of material fact about the property's value.

Although Mrs. Johnson's breach of contract claim is barred by the statute of limitations, there is no statute of limitations for her quiet title claim.[44] In *Wood v. HSBC Bank USA, N.A.*, a homeowner brought actions for, among other things, breach of contract and to quiet title because the lender for her home equity loan charged fees that were more than 3% of the loan.[45] The trial court dismissed all the claims on statute of limitations grounds, but the homeowner appealed arguing that the claim to quiet title was not subject to a statute of limitations.[46] On appeal, the Texas Supreme Court held that when a lien is based on a home equity loan that violates the Texas Constitution, the lien is void even if the lender later cures the non-compliance.[47] Because the lien is void, no statute of limitations applies to a quiet title action to strip the lien.[48]

---

[42] Mrs. Johnson argues that only breach of contract claims brought under 50(a)(6) are barred by the statute of limitations, not breach of contract claims brought under 50(c), citing *Wood v. HSBC Bank USA, N.A.*, 505 S.W. 3d 542 (Tex. 2016) (discussed below). Hr'g on Mot. for Summ. J (Dec. 12, 2018); Resp. to Mot. for Summ. J, ECF No. 28, pg. 5. But Mrs. Johnson's Amended Complaint cites 50(a)(6) as the authority for her breach of contract claims, not 50(c), so the Court need not address this distinction. Am. Compl., ECF No. 23, pg. 5-7. Even if she had cited 50(c) in support of her breach of contract claim, the Texas Supreme Court in *Wood* stated "[a] declaratory-judgment action based on a constitutional right to forfeiture is not available to access the forfeiture remedy." *Wood*, 505 S.W. 3d at 551. The text of 50(c) merely provides that a lien on a homestead will never be valid unless it complies with section 50, but it does not specify provisions that, if breached, could create a contractual remedy. TEX. CONST. art. XVI, § 50(c). Those terms, including the 80% loan to value term, are in 50(a)(6). TEX. CONST. art. XVI, § 50(a)(6).
[43] Tex. Civ. Prac. & Rem. Code §38.001 (2017).
[44] *Wood v. HSBC Bank USA, N.A.*, 505 S.W. 3d 542 (Tex. 2016).
[45] *Id*.
[46] *Id*. at 544.
[47] *Id*. at 550.
[48] *Id*. at 550.

But Chase presents two other arguments for dismissing the quiet title claim. First, Chase says that quasi-estoppel applies because Mrs. Johnson previously swore under oath that the loan amount was less than 80% of her home's value.[49] This affirmative defense "precludes a party from asserting, to another's disadvantage, a right inconsistent with a position [it has] previously taken. It applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he received a benefit."[50] Chase argues that it would be unconscionable to let Mrs. Johnson keep the loan proceeds, not make payments on the loan for over six years, and then invalidate its lien based on information she had when she signed the affidavit affirming the $140,045 value.

Mrs. Johnson does not dispute that she now takes an inconsistent position or that she received a benefit from the loan. Instead, she says it is not unconscionable for her to now assert that the value was incorrect because of irregularities with Chase's valuation. Indeed, Chase's own exhibits show that it extrapolated the property's value from the TransUnion report by somehow removing the property that could not be encumbered by the home equity loan.[51] And, as Mrs. Johnson points out, the TransUnion report is missing key information about the property, including the number of rooms and bathrooms in the home.[52] But these problems with the valuation only create a material issue of fact on whether it would be unconscionable to release Mrs. Johnson from her statements in the affidavit if she can also point to some evidence that the value in the affidavit was in fact wrong. But was there any such evidence? Before answering,

---

[49] Mot. for Summ. J., ECF No. 25-2, pg. 36.
[50] *Bott v. J.F. Shea Co., Inc.*, 299 F.3d 508, 512 (5th Cir. 2002); *Lopez v. Munoz, Hockema & Reed, LLP*, 22 S.W.3d 857, 864 (Tex. 2000). Chase breaks this down into elements and adds "the Plaintiff had knowledge of all material facts at the time of the conduct on which estoppel is based," as another element. Mot. for Summ. J., ECF No. 25, pg. 13. While it does not appear knowledge of material facts is a necessary element of a quasi-estoppel affirmative defense, what the Debtor knew at the time of origination is another fact issue that can be sorted out through testimony at trial.
[51] Mot. for Summ. J., ECF No. 25-2, pg. 49.
[52] Mot. for Summ. J., ECF No. 25-2, pg. 34.

let's look at Chase's next argument.

Chase's next argument relies on several federal district court cases. In each case, the court ruled against the borrower's claim that a loan violated the home equity loan provisions in the Texas Constitution. Each court did so because the borrower signed documents when they got the loan that contradicted the allegations in the complaint.[53] In the most recent case cited by Chase, *Reese v. Wells Fargo Bank, N.A.*, the borrower alleged a violation of the same 80% provision at issue here.[54] There, the borrower, like Mrs. Johnson, signed a sworn affidavit stating that the principal amount of the loan, when added to other encumbrances on the property, did not exceed 80% of the fair market value of the property.[55] Because the borrower's allegation that the loan violated the 80% provision contradicted the affidavit attached as an exhibit to the dismissal motion, the court found that the affidavit was enough to warrant dismissal of the borrower's constitutional claims.[56]

But there is some contrary authority. In *Towler v. U.S. Bank, N.A.*,[57] a borrower sought to have a lien declared void because it was secured by property that was primarily for agricultural use, another prohibition in 50(a)(6).[58] The borrower had signed an affidavit stating that the property was not designated for agricultural use, but had attached to the complaint a notice from

---

[53] Mot. for Summ. J., ECF No. 25, pg. 14, n. 59; *Reese v. Wells Fargo Bank, N.A.*, 2017 WL 5992406 (N.D. Tex. 2017) (granting motion to dismiss because the plaintiff signed a sworn affidavit that the loan complied with the Texas Constitution); *Villagran v. JPMorgan Chase Bank N.A.*, 2015 WL 12550936, at *1 (S.D. Tex. 2015) (granting summary judgment on the same basis); *Summers v. PennyMac Corp.*, 2012 WL 5944943, at *9 (N.D. Tex. 2012) (granting motion to dismiss on the same basis); *Amaro v. Bear Stearns Residential Mortgage Corp.*, 2016 WL 6775504, at *2 (S.D. Tex. 2016) (granting motion to dismiss where the plaintiffs "failed to present any evidence to controvert" the defendant's evidence that the plaintiffs were in default on their loan).

[54] *Reese v. Wells Fargo Bank, N.A.*, 2017 WL 5992406, at *1 (N.D. Tex. 2017).

[55] *Id.* at *3.

[56] *Id.* at *4 (N.D. Tex. 2017). *See also Amaro*, 2016 WL 6775504, at *2 (case dismissed because the borrower swore the loan complied with 50(a)(6)); *Villagran v. JPMorgan Chase Bank N.A.*, 2015 WL 12550936, at *1 (S.D. Tex. 2015) (same); *Summers v. PennyMac Corp.*, 2012 WL 5944943, at *9 (N.D. Tex. 2012) (same).

[57] *Towler v. U.S. Bank, N.A.*, 2018 WL 1756737, at *1 (S.D. Tex. 2018).

[58] *Id.*

9

an appraisal district dated from before the loan showing that the property was mostly agricultural land.[59] The court distinguished *Reese* because it involved a motion for summary judgment, not a motion to dismiss, and the borrower there had produced no evidence to rebut the affidavit.[60] In *Towler*, in contrast, evidence existed that refuted the statements in the affidavit, and on this basis, the court refused to grant the motion to dismiss.[61]

As in *Towler*, there is evidence here that the statement in the affidavit—the valuation—was wrong. The TransUnion report states that the assessed value of the entire 4.12-acre property was only $76,465,[62] which is some objective evidence[63] that the value stated in the affidavit was incorrect, meaning that Chase may have violated the loan to value ratio. This objective evidence of a lower value at the time of the loan also creates an issue of fact [64] on whether it would be unconscionable to let Mrs. Johnson show that the value she affirmed in the affidavit at the time of the loan was wrong.

### 3. Chase cannot conclusively rely on the safe harbor provision in the Texas Constitution because the value in the acknowledgment was not in an appraisal or evaluation.

Last, Chase argues that it is protected by the "safe harbor" provision in the Texas Constitution.[65] This provision states:

> A lender or assignee for value may conclusively rely on the written acknowledgment as to the fair market value of the homestead property made in accordance with Subsection (a)(6)(Q)(ix) of this section if:
>
> > (1) the value acknowledged to is the value estimate in an appraisal or

---

[59] *Towler v. U.S. Bank, N.A.*, 2018 WL 1756737, at *1 (S.D. Tex. 2018).
[60] *Id.* at *4.
[61] *Id.*
[62] Mot. for Summ. J., ECF No. 25-2, pg. 34.
[63] *In re AMRCO*, 496 B.R. 442, 446 n. 4 (Bankr. W.D. Tex. 2013) (finding a tax appraisal provided some probative evidence of value).
[64] At the summary judgment hearing, counsel for both parties agreed that whether something would be "unconscionable" is a fact issue. Hr'g on Mot. for Summ. J (Dec. 12, 2018).
[65] Mot. for Summ. J., ECF No. 25, pg. 17-21.

> evaluation prepared in accordance with a state or federal requirement applicable to an extension of credit under Subsection (a)(6); and
>
> (2) the lender or assignee does not have actual knowledge at the time of the payment of value or advance of funds by the lender or assignee that the fair market value stated in the written acknowledgment was incorrect.[66]

Chase fails to meet the first prong of the safe harbor because the value acknowledged by Mrs. Johnson, $140,045,[67] was not the $150,000 value in the TransUnion report.[68] If Chase wanted to shield itself using the safe harbor provision, it should have obtained a new evaluation on just the homestead property.

### III. CONCLUSION

For the reasons stated above, the motion for summary judgment should be granted as to the breach of contract claim, denied as to the quiet title claim, and denied as to the safe harbor.

---

[66] TEX. CONST. art. XVI, § 50(h).
[67] Mot. for Summ. J., ECF No. 25-2, pg. 49.
[68] Mot. for Summ. J., ECF No. 25-2, pg. 34.